UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| STEHPEN G.[1] | Case No. 6:19-cv-02052-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| ANDREW SAUL,<br>Commissioner of Social Security,<br>　　　　　　　Defendant. | |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Stephen G. ("Plaintiff") filed this action under section 205(g) of the Social Security Act (the "Act") as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of Social Security (the "Commissioner") who denied him social security disability insurance benefits ("DIB") and supplemental security income ("SSI") (collectively "Benefits").

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

PAGE 1 - OPINION AND ORDER

The court finds the ALJ adequately identified the portions of Plaintiff's testimony she found not entirely credible and provided clear and convincing reasons for discounting Plaintiff's testimony regarding her limitations. Accordingly, the Commissioner's final decision is supported by substantial evidence in the record and is affirmed.[2]

*Procedural Background*

On or about April 12, 2018, Plaintiff filed applications for DIB and SSI alleging an onset date of April 11, 2018. The applications were denied initially, on reconsideration, and by Administrative Law Judge Katherine Weatherly (the "ALJ") after a hearing. The Appeals Council considered supplemental evidence offered by Plaintiff in the form of progress notes and treatment records from March 25, 2019, to August 12, 2019, and found the evidence was not new, "did not show a reasonable probability that it would change the outcome of the decision" or did "not relate to the period at issue." (Tr. of Social Security Administrative R., ECF No. 11 ("Admin. R."), at 2.) The Appeals Council then denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner.

*Factual Background[3]*

Plaintiff is fifty-five years old. He completed four or more years of college. His past relevant work experience includes sheriff's deputy, police officer, retail security guard, and sales representative of recreation and sporting goods. Plaintiff has not been involved in a successful

---

[2] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

[3] Plaintiff asserts the ALJ erred by improperly rejecting his testimony regarding symptoms and limitations relating to his hip complaints. Consequently, the court will concentrate its review on medical evidence relating primarily to this complaint.

PAGE 2 - OPINION AND ORDER

work attempt since April 11, 2018.  He alleges disability because of a torn ligament in his left hip.  Plaintiff meets the insured status requirements entitling him to DIB through June 30, 2023.

I.  Testimony

Plaintiff competed a function report on June 1, 2018 ("Report"), in which he explained he hurt his hip sometime in 2016, was originally diagnosed with bursitis, and prescribed physical therapy that made his hip worse.  (Admin. R. at 260.)  In late 2017, an MRI revealed he had a torn ligament and labrum.  (Admin. R. at 260.)  The pain increased to the point he was not able to "stand for more than a few minutes" and could "barely walk or sit down without severe pain."  (Admin. R. at 260.)  He described his average day as follows:  "Eat, take medicine, sit on couch, repeat."  (Admin. R. at 261.)  He tries to help his eighty-year-old father by cooking frozen dinners and finding cassette tapes for him, but Plaintiff no longer is able to work out, work at Cabela's, empty the garbage, or do any household chores or yard work.  (Admin. R. at 261, 263.)  He has difficulty sleeping because of pain and must get up at night to move around.  (Admin. R. at 261.)  He is able to manage his own personal care and prepares all his meals.  (Admin. R. at 262.)  He goes outside once or twice a day and shops once a week for an hour at a time with the use of a cane, but he rarely drives.  (Admin. R. at 263, 266.)  He stated his hip pain affects his ability to lift, squat, bend, stand, reach, walk more than twenty feet, sit for an hour, kneel, climb stairs, and complete tasks.  (Admin. R. at 265.)

At the April 10, 2019 Hearing before the ALJ ("Hearing"), Plaintiff testified he lives with his eighty-year-old father.  (Admin. R. at. 62.)  He has a driver's license and is able to drive an automatic for short trips, but his father usually does the driving.  (Admin. R. at. 62-63.)  He left his job at Cabela's in April 2018 because "[i]t just got too painful to stand on my feet all day and he was not able to last the two hours between breaks without sitting down.  (Admin. R. at. 63, 74.)

PAGE 3 - OPINION AND ORDER

His hip pain with medication is at a level of seven or eight out of ten, with "one being not much pain and ten being you need to be hospitalized," and at a nine without medication. (Admin. R. at 71.)

On a normal day, Plaintiff gets up, eats breakfast, watches television, listens to different news stations on his telephone, and hangs out with his father in the afternoon. (Admin. R. at 68-69.) He has used his father's cane for about six months, is unable to walk more than fifty yards, can sit for an hour or two with pain medication, and can "drag" a light grocery bag up the stairs with difficulty. (Admin. R. at 67, 69.) If he engages in any activity, such as shopping or going to a doctor's appointment, he must spend the next day resting his leg and hip. (Admin. R. at 72-73.)

Plaintiff testified his hip pain started "about three years ago" while he was at the gym. (Admin. R. at 66.) He stated he tried physical therapy once but did not return because it exacerbated his pain. (Admin. R. at 69.) Plaintiff stated he had surgery to reattach torn ligaments scheduled for June 25, 2019, and that he would like to return to a law enforcement job if the surgery resolves his hip pain. (Admin. R. at 66, 76.)

II. Medical Evidence

    A. Treating Physicians

        1. Slocum Orthopedics, P.C.

Plaintiff sought treatment for his hip pain from Denise D. Routhier, M.D., of Slocum Orthopedics, P.C. ("Dr. Routhier"), who performed a trochanteric bursa injection in August 2016. (Admin. R. at 381.) Plaintiff returned to Dr. Routhier in May 2017 to discuss the results of his hip MRI. (Admin. R. at 381.) He reported the injection provided relief for a "couple of months and then slowly started to wear off." (Admin. R. at 381.) He explained the pain increases when he is

squatting or doing a leg work out or is at rest after any activity; he has intermittent numbness in his hip when working out; physical therapy is not helpful and exacerbates the pain, he medicates with hydrocodone when the pain is severe, and he has no significant pain at night. (Admin. R. at 381.) Dr. Routhier observed focal tenderness over the greater trochanter and discomfort with passive stretch of the gluteal musculature but noted Plaintiff was otherwise pain-free during the examination. (Admin. R. at 383.) Dr. Routhier opined the acetabular tear seemed "unlikely to be the main source of the pain," performed another trochanteric bursa injection, and referred Plaintiff to physical therapy for work on the gluteal tendinopathy. (Admin. R. at 383.)

On June 6, 2017, Tracy E. Livernois, P.T. ("Livernois") indicated Plaintiff reported "pretty constant" pain at six or seven out of ten, he was working out five times a week, and he needed to take pain medication to sleep. (Admin. R. at 379.) Livernois noted Plaintiff was "not helping pain in L hip by pushing through heavy wt lifting exercises at gym," and she recommended Plaintiff avoid the heavy lifting and squats, include more endurance lifting, and start stretching exercises for his tight gluts, posterior legs, hamstrings, and calves. (Admin. R. at 379.) Plaintiff did not return for a second physical therapy session because it increased his pain and he thought it was a "waste of time." (Admin. R. at 375.)

Plaintiff returned to Dr. Routhier on June 27, 2017, "quite convinced that the 'tear' of his hip needs to be fixed." (Admin. R. at 376.) He reported the second injection was not as helpful as the first, he was more active at his job, was not working out, the pain was limiting his ability to be active, and he had slight anterior groin discomfort. (Admin. R. at 375.) Because the second bursa injection proved less helpful, Dr. Routhier performed a hip joint injection for diagnostic purposes and suggested he obtain a second opinion "as to whether he may benefit from hip arthroscopy." (Admin. R. at 376.) Dr. Routhier performed another hip joint injection on April

PAGE 5 - OPINION AND ORDER

10, 2018, when Plaintiff reported the hip joint injection provided slightly more improvement than the bursa injection. (Admin. R. at 368, 370.) However, Plaintiff was still reporting persistent pain in his hip that worsens with activities and when "stepping hard," and stated he was unable to stand or walk for prolonged periods, had to sit regularly, and had difficulties at night due to pain. (Admin. R. at 368.)

        2.  OHSU Orthopaedics

Hayley Ceeann Piepmeyer, PC-C ("Piepmeyer") examined Plaintiff on June 25, 2018 for reports of left hip pain dating to December 2016. (Admin. R. at 348, 350.) Her summary of Plaintiff's reported symptoms provides, in pertinent part:

> He describes his pain as constant, achy and sharp, stabbing pain localizing to the posterolateral hip. He does not have groin pain. He has tried rest, ice, steroid injections, anti-inflammatory medication and narcotic medication for pain relief and feels that nothing is particularly effective. Stephen describes pain which worsens with activity, walking, sports and sitting and rates 9 out of 10 at its worst. This level of pain causes severe disability. The severity of pain is activity related.
>
> Stephen denies startup pain or catching after prolonged sitting. He also describes difficulty getting in or out of low-seated cars. He describes difficulty with putting on shoes and socks.
>
> Stephen denies numbness, tingling or pain radiating into the left leg and foot.

(Admin. R. at 350.) Plaintiff stated he had to stop working because he could not stand for more than an hour and indicated hydrocodone helps with his pain. (Admin. R. at 350.) Piepmeyer's examination revealed normal gait, posture, lumbar spine rotation, and muscle strength in hips and lower extremities; intact sensation to light touch in lower extremities; equal bilateral hip range of motion; negative straight leg raise test at fifty degrees bilaterally, impingement test, and stability exam; with "tenderness to palpation at posterior troch near site of glut medius/minimus insertion." (Admin. R. at 351.) Piepmeyer did "not feel that his pain is related to the degenerative labral

tearing seen on MRI as he does not have FAI on x-rays and his pain is all lateral," and recommended a cortisone injection followed by physical therapy. (Admin. R. at 352.) Ryan M Norton, D.O. ("Dr. Norton"), performed the injection later that day. (Admin. R. at 349.)

On July 10, 2018, Plaintiff reported "the injection worked great for about 4 days and he almost felt normal again," but his hip pain had increased "to a level where he doesn't feel he can do the PT." (Admin. R. at 348.) Piepmeyer recommended Plaintiff try to treat his "insertional gluteus tendinopathy with physical therapy and Mobic" and forwarded a referral for both. (Admin. R. at 348.) After participating in one physical therapy treatment and working with his trainer at the gym, Plaintiff reported the treatment was too painful. (Admin. R. at 347.) Piepmeyer again recommended Plaintiff continue with formal physical therapy and referred him to Ryan Petering, M.D. ("Dr. Petering") for exam and possible follow-up cortisone injection. (Admin. R. at 347-48.)

On August 24, 2018, Plaintiff told Dr. Petering the first injection provided him with two to three weeks of pain relief and that he had lots of pain which limited his activities, but he did not have numbness, tingling, weakness, or swelling in the hip or lower legs. (Admin. R. at 346.) Dr. Petering opined the "glute tear" was "non surgical" and performed a guided hip joint injection in Plaintiff's left trochanteric bursa. (Admin. R. at 346.). On October 19, 2018, Plaintiff returned to Dr. Petering for another injection but, based on the lack of success of the numerous previous injections, Dr. Petering ordered a repeat MRI of Plaintiff's left hip. (Admin. R. at 486.) Dr. Petering opined Plaintiff's symptoms are most consistent with glut medius tendinopathy and if there were significant internal changes, thought Plaintiff might be a "candidate for salvage surgery such as tendinous release given level of disability and failure to improve with extensive conservative therapy." (Admin. R. at 486.) When the results from the second MRI were

PAGE 7 - OPINION AND ORDER

remarkably similar to the first, Nicholas Weller, M.D. ("Dr. Weller"), recommended Plaintiff increase his activity level, start a home exercise program, and return to physical therapy. (Admin. R. at 487-89.)

       3. Rechelle L. Asirot, M.D.

Plaintiff's medical records show he first complained of chronic left hip pain to Rechelle L. Asirot, M.D. ("Dr. Asirot"), his primary care physician, in April 2017. (Admin. R. at 393-94.) At that time, Plaintiff reported he continued to work out at the gym; his hip pain was moderate but increased with certain movements; and he had some relief with steroid injections and Norco, with no side effects. (Admin. R. at 394.) Dr. Asirot noted Plaintiff had a mildly antalgic gait, full range of motion of the left hip, and significant tenderness to palpation of the left trochanteric bursa but no redness or swelling. (Admin. R. at 395.) Dr. Asirot diagnosed Plaintiff with trochantic bursistis of the left hip and recommended he continue using Norco, gabapentin, and pain creams. (Admin. R. at 393-94.) In May 2017, after reviewing a recent MRI of Plaintiff's hip, Dr. Asirot opined Plaintiff had a complex degenerative left acetabular tear (hip ligament tear), "highly recommended physical therapy," and referred Plaintiff back to his surgeon. (Admin. R. at 397, 399.)

In August 2017, Plaintiff reported a recent steroid injection helped for about seven days, his pain was a nine out of ten, he continued to use Norco for pain, and he continued to work out at the gym. (Admin. R. at 405.) Dr. Asirot observed Plaintiff had a normal gait with tenderness on palpation of his left anterior hip, renewed his Norco prescription, and recommended he get a second opinion. (Admin. R. at 405-06.) The following month, Plaintiff indicated he had an appointment with an OHSU physician for a second opinion regarding his hip pain and sitting made the pain worse but stated exercise and pain medication helped. (Admin. R. at 409.)

In January 2018 treatment notes, Dr. Asirot commented that Plaintiff reported his "left hip moderate achy pain is relieved by Norco with no side effects. Pt. is going to OHSU ortho for another opinion regarding his left hip." (Admin. R. at 423.) Two months later, Dr. Asirot noted Plaintiff:

> reports he is doing good. Hydrocodone helps. Feels like his medications are really dialed in. He has not been able to exercise, even light exercise is really hard on his left hip. He saw Dr. Routhier who recommended physical therapy. MRI showed left acetabular tear. He couldn't make the 2 hr drive to OHSU for second opinion. He would like someone closer if possible. He takes 3 Norco 10-325 mg tablets daily for his left hip pain.

(Admin. R. at 427.) By May 2018, Plaintiff had quit his job at Cabela's because his hip pain grew worse. (Admin. R. at 436.) Plaintiff reported his hip pain also prevented him from going to the gym and forced him sit frequently, but even the act of sitting down increased his pain. (Admin. R. at 436.) A recent injection did not provide much relief and he had planned to see a specialist in Portland in June. (Admin. R. at 436.) Dr. Asirot observed Plaintiff's gait was normal but he had difficulty standing up and squatting. (Admin. R. at 437.)

Plaintiff did not make his June appointment with the specialist but did get an injection to treat tendinosis in his hip, and he reported brief improvement as a result. (Admin. R. at 441, 447.) In July 2018, Plaintiff stated his hip pain was affecting his ability to drive,[4] play with his kids, accept a job offer, or walk in the mall with his father. (Admin. R. at 447.) However, he also reported his moderate pain was alleviated with Norco. (Admin. R. at 447.) Dr. Asirot reported Plaintiff's gait was normal and he had started working out again. (Admin. R. at 448, 450.) However, by September 2018, Plaintiff's pain had worsened, he was again unable to exercise, an injection provided pain relief for just one day while Norco continued to help, and he "was going

---

[4] Hip pain prevented him from driving a stick-shift vehicle. (Admin R. at 447.)

PAGE 9 - OPINION AND ORDER

to apply for disability because the pain prevented him from working." (Admin. R. at 451.) Treatment notes dated December 4, 2018, provide Plaintiff:

> has an appointment with the surgeon in Portland on Friday, 12/7/18. The pain is getting more frequent. He has been having pain while sitting on the couch, which is new. He is unable to go on walks with his father who is 80 yrs old. He has not been going to the gym as much as he would like. He's had steroid injects which didn't help. His balance had been off and his left leg feels weak.

(Admin. R. at 455.) Plaintiff described his pain as moderate to severe and reported he was taking about three Norco tablets a day without side effects. (Admin. R. at 455.) Dr. Asirot again noted Plaintiff's gait was normal. (Admin. R. at 460.) In February 2019, Plaintiff complained of moderate left lateral thigh pain, reported he stopped physical therapy due to pain, and represented pain shots did not help. (Admin. R. at 463.)

   B. Reviewing Physicians

Thomas W. Davenport, M.D. ("Dr. Davenport"), reviewed Plaintiff's medical records and on August 16, 2018, opined Plaintiff suffered from the severe impairment of "Disorders of Muscle, Ligament and Fascia" but that the limitations described in the Report "are not fully supported by the evidence in [the] file." (Admin. R. at 86-87.) As a result, Dr. Davenport found Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds; was able to stand and/or walk and sit a total of six hours in an eight-hour workday; was limited to occasional crouching, crawling, and climbing of ramps, stairs, ladders, ropes, and scaffolds; and should avoid even moderate exposure to hazards, such as machinery or heights. (Admin. R. at 86, 87.) As a result, Dr. Davenport believed Plaintiff retained the ability to perform "light work."[5] (Admin. R. at 88, 89.)

---

[5] "Light Work" is defined in 20 C.F.R. 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or

Neal Berner, M.D. ("Dr. Berner"), another reviewing physician, agreed with the conclusions and restrictions identified by Dr. Davenport in a report dated October 18, 2018 with the exception of the need to avoid exposure to hazards. (Admin. R. at 111-13.)

### C. Images and Testing

An MRI of Plaintiff's left hip taken on May 11, 2017, revealed: "1. Grade 1 myotendinous strain of left gluteus medius muscle. 2. Moderate tendinosis of the insertional left gluteus minimus and medius tendons. 3. Complex degenerative left acetabular tear." (Admin. R. at 470.) Pelvic x-rays dated June 25, 2018, showed "early to mild bilateral hip osteoarthritis without superimposed acute osseous abnormalities [and] bilateral enthesophyte formation at the greater trochanters which may be associated with underlying gluteal tendon pathology." (Admin. R. at 353-54.) A second MRI performed on November 13, 2018, was "remarkably similar compared to the previous MRI performed in 2017." (Admin. R. at 491.)

### III. Vocational Evidence

Frank Lucas, impartial vocational expert ("Lucas"), appeared at the Hearing and classified Plaintiff's past relevant work of a sheriff deputy and police officer as medium-level work, and his security job in the retail setting (also known as detective I) and sales representation for recreation and sporting goods as light work. (Admin. R. at 78.) The ALJ asked Lucas if a hypothetical individual of Plaintiff's age, education, and work experience able to perform no more than light

---

standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

PAGE 11 - OPINION AND ORDER

work with additional restrictions of occasional climbing, crouching, and crawling could perform Plaintiff's past work. (Admin. R. at 78.) Geer testified such an individual would be able to perform Plaintiff's past work as a sale representative and store security detective as generally performed. (Admin. R. at 78.) When the ALJ further limited the hypothetical individual to sedentary work with the same additional restrictions, Lucas stated Plaintiff's past relevant work would be eliminated but identified job sorter, job document preparer, and telephone solicitor as viable options. (Admin. R. 78-79.)

IV.  ALJ Decision

The ALJ found Plaintiff suffered from the severe impairments of "left hip complex degenerative left acetabular tear and tendinosis" and that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 11, 2018. (Admin. R. at 43.) While conceding Plaintiff's impairments limited his ability to perform basic work activities, the ALJ found such impairments did not meet or equal the severity of any listed impairment. (Admin. R. at 45.) Evaluating Plaintiff's impairments, the ALJ considered Plaintiff capable of performing light work with only occasional crouching, crawling, and climbing of ramps, stairs, ladders, ropes, or scaffolds. (Admin. R at 45.) Despite these limitations, the ALJ deemed Plaintiff capable of performing the physical and mental demands of his past relevant work as a store security detective and sales representative of recreation and sporting goods as generally performed. (Admin. R. at 50-51.) Consequently, she found him not disabled from April 11, 2018 through the date of the May 1, 2019 decision. (Admin. R. at 51.)

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

PAGE 12 - OPINION AND ORDER

medical evidence and other evidence in the record for the reasons explained in this decision." (Admin. R. at 47.) The ALJ discounted Plaintiff's testimony on the limiting effects of his chronic hip pain, noting "medical findings do not support the extent of limitation alleged by the claimant." (Admin. R. at 47.) The ALJ further explained Plaintiff's statements about the limiting effects of his symptoms "are inconsistent because the clinical evidence and diagnostic findings do not substantiate disabling limitations with respect to his ability to sit, stand, walk, or use his extremities." (Admin. R. at 49.) She specifically indicated treatment notes show Plaintiff's "left hip and gluteal pain does not affect his ambulation as it is described as normal with full motor strength of the lower extremities and full range of motion of the left hip throughout the record," and that his "treating providers have advised him to increase his activity level and engage in physical therapy to alleviate pain." (Admin. R. at 49.)

The ALJ also identified inconsistencies in the record, such as Plaintiff's admission he is able to attend to his personal care, help his eighty-year-old father, shop in stores weekly for an hour each time, and requires use of a cane to walk, which were not consistent with his testimony he is "only able to walk 50 yards maximum" and "is able to sit for no longer than an hour or two with pain medications," as well as the lack of "evidence of gait dysfunction despite chronic hip pain" and encouragement from treating providers to increase "activity, home exercise, and physical therapy, which is not suggestive of disabling hip pain." (Admin. R. at 49, 50.) Moreover, while Plaintiff reported he had hip surgery scheduled in June, the ALJ noted "there is no evidence of planned surgical intervention in the record." (Admin. R. at 46, 50.) The ALJ concluded: "Overall, the evidence of record demonstrates that the claimant is more functional than he alleged in his hearing testimony and he is capable of increased daily functioning when motivated and willing to do so." (Admin. R. at 50.)

PAGE 13 - OPINION AND ORDER

*Standard of Review*

The Act provides for payment of DIB to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1) (2020). In addition, under the Act, SSI may be available to individuals who are age sixty-five or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a) (2020). The burden of proof to establish a disability rests upon the claimant. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.), cert. denied, 519 U.S. 881 (1996) (DIB); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992) (SSI). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A) (2020). An individual will be determined to be disabled only if there are physical or mental impairments of such severity that the individual is not only unable to do previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2) (A) and 1382c(a)(3)(B) (2020).

The Commissioner has established a five-step sequential evaluation process to use for determining whether a person is eligible for either DIB or SSI because he or she is disabled. 20 C.F.R. §§ 404.1520 and 416.920 (2020); *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (DIB); *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI). First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, Benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical

or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, Benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of the specifically listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant has performed in the past. If the claimant can perform work which he or she has performed in the past, a finding of "not disabled" is made and Benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to do work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy considering his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Distasio v. Shalala*, 47 F.3d 348, 349 (9th Cir. 1995) (DIB); *Drouin*, 966 F.2d at 1257 (SSI). The claimant is entitled to Benefits only if he or she is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

When an individual seeks either DIB or SSI because of disability, judicial review of the Commissioner's decision is guided by the same standards. 42 U.S.C. §§ 405(g) and 1383(c)(3). The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g) (2020); *Batson* v. *Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004).

PAGE 15 - OPINION AND ORDER

"Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki v. Shalala,* 999 F.2d 1411, 1413 (9th Cir. 1993).

The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins,* 466 F.3d at 882; *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). Thus, where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld, even where the evidence can support either affirming or reversing the ALJ's conclusion. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). In determining a claimant's residual functioning capacity, an ALJ must consider all relevant evidence in the record, including, *inter alia,* medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883, citing SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1 545(a)(3), 416.945(a)(3); *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir.1996). However, the reviewing court must consider the entire record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007).

*Discussion*

Plaintiff asserts the ALJ erred by improperly discounting his testimony with regard to his pain and resulting limitations. Specifically, Plaintiff claims "the ALJ summarized the medical evidence without identifying what testimony of Plaintiff's she found not credible, and therefore,

PAGE 16 - OPINION AND ORDER

she did not link that testimony to the particular parts of the record supporting her non-credibility determination." (Pl.'s Opening Br, ECF No. 12 ("Br."), at 9). The Commissioner contends the ALJ properly considered the evidence in accordance with the terms of the Act and related regulations, and the decision should be affirmed.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929 (2019). The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, absent affirmative evidence the claimant is malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make sufficiently specific findings to permit the reviewing court to conclude the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039. "Credibility determinations are the province of the ALJ" and the court may not "second-guess" the ALJ's determination if they have made specific findings that are supported by substantial evidence in the record. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

\ \ \ \ \

PAGE 17 - OPINION AND ORDER

Here, the ALJ found Plaintiff produced objective medical evidence of an underlying impairment that reasonably could be expected to produce the symptoms alleged and did not identify any evidence to establish Plaintiff was malingering. Thus, the ALJ was required to offer clear and convincing reasons for rejecting Plaintiff's testimony regarding his limitations. To meet this standard, "[t]he ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints – '[g]eneral findings are insufficient.'" Burch 400 F.3d at 680, (quoting Reddick v, Chater, 157 F.3d 715,722 (9th Cir. 1998)); Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (*en banc*) ("[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain.").

The ALJ expressly found "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Admin. R. at 47). The Ninth Circuit has expressly held a boilerplate statement such as this, without more, "falls short of meeting the ALJ's responsibility to provide 'a discussion of the evidence' and 'the reason or reasons upon which' his adverse determination is based." Treichler v. SSA, 775 F.3d 1090, 1103 (9th Cir. 2014) (quoting 42 U.S.C. § 405(b)(1)); Brown-Hunter, 806 F.3d at 493 (ALJ's finding that limitations identified by claimant were less serious than alleged based on unspecified claimant testimony and a summary of medical evidence insufficient to meet clear and convincing standard). Here, however, the ALJ engaged in additional discussion of the evidence and reasons for discounting Plaintiff's testimony.

The ALJ acknowledged Plaintiff's degenerative left acetabular tear and tendinosis of his left hip could limit some of his functional abilities but found he maintained the ability to perform light work with only occasional crouching, crawling, and climbing. (Admin. R. at 45.) The ALJ

PAGE 18 - OPINION AND ORDER

then specifically noted Plaintiff's treatment records – which consistently showed Plaintiff's hip pain did not affect his ability to ambulate normally, and that he retained normal motor strength of his lower extremities and range of motion in his left hip – did not substantiate his testimony on his "disabling limitations with respect to his ability to sit, stand, walk, or use his extremities." (Admin. R. at 49.)  The ALJ also referenced recommendations from Plaintiff's treating providers that he increase his activity level and engage in physically therapy, as evidence Plaintiff was not as limited as he represented.  The record shows the ALJ made clear which portions of Plaintiff's testimony he found not entirely credible and the medical evidence he relied on in making such findings.

The ALJ also found Plaintiff's description of his daily activities to be inconsistent with his testimony regarding his functional limitations.  An ALJ may use a claimant's daily activities to reject his subjective symptom testimony on either of two grounds:  (1) if the reported activities contradict the claimant's other testimony; or (2) if the activities meet the threshold for transferable work skills.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  The ALJ was justified in discrediting Plaintiff's subjective testimony on both grounds.

"[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities."  *Burch*, 400 F.3d at 681-82.  In *Burch*, the ALJ partially rejected the claimant's pain testimony explaining the claimant's daily activities "suggest that she is quite functional.  She is able to care for her own personal needs, cook, clean and shop.  She interacts with her nephew and boyfriend.  She is able to manage her own finances and those of her nephew." *Id*. at 681.  The court found the explanation constituted specific findings sufficient to support the ALJ's credibility determination. *Id*. at 681-82.  Here, the ALJ made similar findings,

relying on Plaintiff's own testimony that he had no difficulty managing his personal care, prepared meals, helped his elderly father, and went grocery shopping. (Admin. R. at 49, 50.)

Additionally, Plaintiff's testimony regarding his physical limitations was inconsistent with his description of his daily activities. The ALJ noted Plaintiff testified as the Hearing he could not walk more than fifty yards, sit for more than an hour or two with pain medication, or carry more than a light grocery bag up the stairs. She then found these extreme limitations were not consistent with Plaintiff's testimony that he is essentially independent, assists his father, shops for an hour at a time, and is able to walk with a cane. Finally, the ALJ commented that Plaintiff's representation he had hip surgery scheduled in two months was belied by the medical record, which revealed no scheduled surgery or even an opinion surgery was appropriate. The ALJ's justification for discounting Plaintiff's subjective testimony with respect to his inability to walk more than fifty yards, sit for more than two hours with medication, or carry even light items based on inconsistent activities of daily living is valid and supported by the record.

The ALJ found Plaintiff generally able to perform light work. This finding is consistent with Plaintiff's daily activities, his medical providers' observations, and the reviewing physicians' conclusions. The ALJ did not err in discounting Plaintiff's testimony and finding him capable of light work with some additional restrictions.

## Conclusion

The Commissioner's findings on Plaintiff's disabilities, considering the record as a whole, are supported by substantial evidence. The decision of the Commissioner is affirmed.

DATED this 30th day of March, 2021.

JOHN V. ACOSTA
United States Magistrate Judge